HON. ROBERT F. KELLY Chairman New York State Commission on Cable Television
This is in reply to your letter of January 7, 1976, requesting my opinion as to the validity, pursuant to Article VII, § 8 of the New York State Constitution, of an appropriation "for services and expenses for technical assistance to the South Bronx Communications and Media Access Center", proposed to be established as a not-for-profit corporation to promote the utilization of telecommunications technology for cultural and educational purposes.
Article VII, § 8, as pertinent to this inquiry provides:
 "1. The money of the state shall not be given or loaned to or in aid of any private corporation or association, or private undertaking; * * * but the foregoing provisions shall not apply to any fund or property now held or which may hereafter be held by the state for educational, mental health or mental retardation purposes.
 "2. Subject to the limitations on indebtedness and taxation, nothing in this constitution contained shall prevent the legislature from providing for the aid, care and support of the needy directly or through subdivisions of the state; * * * or for the education and support of the blind, the deaf, the dumb, the physically handicapped, the mentally ill, the emotionally disturbed, the mentally retarded or juvenile delinquents as it may deem proper; or for health and welfare services for all children, either directly or through subdivisions of the state, including school districts* * *."
The South Bronx Communications and Media Access Center is proposed to be established as a not-for-profit corporation, having as its purposes:
 "i. To encourage, promote and foster the utilization of telecommunications technology for cultural and educational objectives by:
 "A) educating the public and members of the corporation in the ability of telecommunications technology to serve as a resource for community programs in such areas as health, education, housing and social services;
 "B) establishing a media access center for the production and showing of video tape programs and for the training and instructing of the personnel of the corporation and the public in all aspects of the production of video tape programs;
 "C) establishing neighborhood viewing centers as outlets for the showing of films and video tape programs of cultural and educational interest to the community;
 "D) encouraging and assisting community groups, including but not limited to schools, libraries, health and social service agencies, and housing agencies, to use video tape equipment and techniques as a means to communicate information about available services and, where appropriate, as a means for actual delivery of services;
 "E) stimulating an awareness of video communications generally and thereby fostering the active and informed participation of the public in the planning, programming and operational aspects of a telecommunications system;
 "F) conducting research into and supplementing alternative means for distributing film material and video tape material to the public.
 "ii. To do any other act or thing incidental to or connected with the foregoing purposes or in advancement thereof, but not for the pecuniary profit or financial gain of its members, directors or officers, except as permitted under Article 5 of the Not-for-Profit Corporation Law."
The material attached to your inquiry indicates that, in implementing the purposes of the corporation, it is planned that the Media Access Center will produce programs on topics dealing with nutrition, dietetics, health hazards, inoculations, communicable diseases, etc. as tools for educating the community on preventive measures in health care. Working with local school districts, the Center will develop programs dealing with general, bi-lingual and adult education. The Center's programs, among other topics, will also inform community residents as to social services available to them.
While a not-for-profit corporation is a "private corporation" within the prohibition by Article VII, § 8, of a gift of State funds, the purposes of the proposed corporation and the plans for implementation of those purposes clearly bring it within the exceptions for education, health and social services contained in that section of the Constitution.
I, therefore, conclude that, assuming the corporation is formed as proposed and its purposes implemented substantially as outlined above, a State appropriation for "services and expenses for technical assistance" to the Center would not violate Article VII, § 8 of the State Constitution.